THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v. JOSEPH TALEISNIK, Appellant.

Crimes — seduction — evidence — indictment for seduction
under promise of marriage — corroboration required to support
testimony of complainant — judgment of conviction reversed
on ground that corroborating evidence is insufficient.

1. It is required by way of corroboration of the testimony of a
complainant on the trial of an indictment for seduction under promise
of marriage (Penal Law, § 2177) that there should be some fact deposed
to, independently altogether of the evidence of the complainant, which,
taken by itself, leads to the inference not only that a crime has been
committed, but that the prisoner is implicated in it. Such corrobora-
tion must be of a character which tends to prove the defendant's
guilt by connecting *him* with the crime, and if there be no such
evidence tending to connect the defendant, a question of law *is* pre-
sented reviewable by this court. The corroborating evidence must
be such as tends to connect the defendant with the sexual act.

2. The defendant was convicted of the crime of seduction under
promise of marriage (Penal Law, § 2175), and judgment of conviction
has been unanimously affirmed by the Appellate Division. The
woman testified that under a promise of marriage defendant seduced
her and detailed the circumstances. She also stated that the accused
accompanied her to a doctor's office where he admitted that she was
his wife. The doctor was called and stated that the woman called
with a man who represented himself to be her husband but whom he
failed to identify as the defendant. The court refused a request to
charge the jury that they could not consider the testimony of the
doctor or any part of it as being corroborative evidence. *Held*, error.

3. A witness testified that in response to a question as to the time
of his marriage to complainant, defendant stated that " physically,
spiritually, bodily and morally they were married, ritually they
would be married very soon." The court erroneously refused to
charge the jury that if these words were employed, still " if they
find that they were used at a time and under such circumstances as
to indicate that they were not intended by the defendant as an
assertion that he had had sexual intercourse with the prosecutrix,
that they cannot then consider such testimony as being corroborating
evidence of the act of sexual intercourse."

*People* v. *Taleisnik*, 186 App. Div. 905, reversed.

(Argued January 20, 1919; decided February 25, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 15, 1918, which affirmed a judgment of the Kings County Court rendered upon a verdict convicting the defendant of the crime of seduction under promise of marriage.

The facts, so far as material, are stated in the opinion.

*Robert H. Elder* and *Otho S. Bowling* for appellant. The court erred in refusing to charge this request: " I request your Honor to charge that they cannot consider the testimony of Dr. Huber, or any part of it, as being corroborating evidence in this case." (Code Crim. Pro. § 399; Penal Law, §§ 2013, 2177; 3 Wigmore on Ev. §§ 2059–2062; *People* v. *Farina,* 134 App. Div. 110; *People* v. *Cole,* 134 App. Div. 759.)

*Harry E. Lewis, District Attorney* (*John E. Ruston* and *Harry G. Anderson* of counsel), for respondent. The court properly admitted the testimony of Dr. Huber and properly refused to charge the jury that they could not consider the same as being corroborative evidence. (*People* v. *Sweeney,* 213 N. Y. 37; *Cronin* v. *Lord,* 161 N. Y. 90; *Wilson* v. *K. C. El. R. R. Co.,* 114 N. Y. 487; *People* v. *Fernandez,* 35 N. Y. 49; *Siedenspinner* v. *Met. Life Ins. Co.,* 175 N. Y. 95; *Ostrander* v. *Snyder,* 73 Hun, 378; 148 N. Y. 757; 1 Jones' Comm. on Ev. 893; *Deal* v. *State,* 140 Ind. 354; *People* v. *O'Sullivan,* 104 N. Y. 481; *People* v. *Page,* 162 N. Y. 272; *People* v. *O'Farrell,* 175 N. Y. 323.)

CRANE, J. Two refusals of the trial court to charge the jury in this case have raised such substantial points of law that they require careful consideration irrespective of what we may think of the defendant's guilt.

The defendant was convicted of the crime of seduction in the County Court of Kings county and sentenced to

the penitentiary. The judgment has been unanimously affirmed by the Appellate Division. The prosecutrix, named Helen Levine, was a trained nurse, twenty-three years of age, residing with her sister and brother-in-law at 663 Howard avenue in the borough of Brooklyn, city of New York — a four-room apartment. The defendant, thirty-four years of age, was in the newspaper business, residing in the same borough. That the parties had become engaged to be married was established beyond doubt. Both families were acquainted with their intentions. Presents had been given and the trousseau partially prepared. For some reason the man refused to marry the woman and she repaired to the Police Court and swore out a warrant, charging him with having seduced her. She testified that on the night of June 7th, 1917, in the bedroom of her apartment the defendant under the promise of this marriage persuaded her to have illicit relations with him, and that the act was repeated on occasions thereafter. She did not become pregnant and the first knowledge that others had of the improper relationship was the public statement of the woman.

The corroboration of her story was attempted in three different ways: *First,* by the defendant's supposed acknowledgment of the deed in a casual conversation while at the table with the family. *Second,* by his alleged failure to specifically deny having had intercourse with her when asked by his friends to marry the girl whom they said he had ruined. And *third,* by the testimony of a doctor who says that Helen Levine called at his house for a vaginal examination with some man whom he could not identify.

The woman testified that she in company with the defendant called upon Dr. Frederick W. Huber at his office, 113 East Broadway, New York city, to make inquiries regarding certain pains which she felt internally — not from fear of pregnancy — and that the defendant

said she was his wife. The doctor testified that the man who called represented himself to be the husband of the woman.

The pertinent questions to this witness and the answers are these:

" Q. Do you remember that Miss Levine visited your office in company with a man?

" A. I do.

" Q. Are you able to identify the man that she came with on that occasion?

" A. No, sir.

" Q. Will you look at the defendant and state whether or not he is the man.

" A. I could not state that."

The defendant was in no way identified as the man who called with the prosecutrix except by her word. Yet Dr. Huber's testimony was submitted to the jury as evidence corroborating her account of the defendant's intercourse with her.

At the close of the charge this request was made by the defendant's counsel:

" I request your Honor to charge that they cannot consider the testimony of Dr. Huber or any part of it as being corroborative evidence in this case.

" The Court: Refused."

The question presented by this ruling is, therefore, as follows:

The woman testifies that under a promise of marriage a man seduced her and details the circumstances. She also states that the accused accompanied her to a doctor's office where he admitted his guilt. Her evidence alone is insufficient; this is readily acknowledged. She cannot create corroboration by multiplying incidents and events. The doctor is called who states that the woman called with some man, but he fails to identify the defendant and in fact does not identify him.

How possibly does this corroborate the woman's statement that the man she brought there was the defendant? Does this testimony of the doctor identify the defendant or tend to connect him with the offense? The only word we have that the defendant was present in the doctor's office is the word of the woman. His connection with the case is dependent entirely upon her story. This is not slight evidence of corroboration; it is no evidence whatever.

Section 2177 provides that no conviction can be had for seduction under promise of marriage upon the testimony of the female seduced unsupported by other evidence. The other evidence must tend to connect the defendant with the commission of the crime, as stated in section 399 of the Code of Criminal Procedure regarding the testimony of accomplices. (*People* v. *Plath*, 100 N. Y. 590.) · In *People* v. *O'Farrell* (175 N. Y. 323, 325) it was said of corroborating evidence:

" What appears to be required is, that there should be some fact deposed to, independently altogether of the evidence of the accomplice, which, taken by itself, leads to the inference not only that a crime has been committed, but that the prisoner is implicated in it."

It was also said that corroboration must be of a character which tends to prove the defendant's guilt by connecting *him* with the crime, and that if there be no such evidence tending to connect the defendant, a question of law is presented reviewable by this court.

In crimes of this nature the woman must be corroborated in two particulars: *First,* as to the marriage; *second,* as to the seduction. The corroborating evidence upon this latter point must be such as tends to connect the defendant with the sexual act. (*People* v. *Page*, 162 N. Y. 272; *People* v. *Hooghkerk*, 96 N. Y. 149–162.) In *People* v. *Cole* (134 App. Div. 759) it was said of a doctor's testimony regarding the pregnancy of the

woman that it simply proved that she had had sexual intercourse with some man, but was not corroborative of the plaintiff's testimony against the defendant. The court in *People* v. *Flaherty* (27 App. Div. 535–546), a trial for rape, charged the jury " the fact that the child was born is no evidence corroborating the claim of the people that this defendant is the guilty man." This was held to be correct. This case was reversed in 162 New York, 532, but this point was not mentioned. The rule in Massachusetts as stated in *Commonwealth* v. *Holmes* (127 Mass. 424) is not quite in accord with our own, although it is intimated that in charging juries the practice is the same.

The measure of corroboration required in the so-called sexual crimes (Penal Law, sections 2013, 2177, 2460, subdivision 9) is more than that demanded by section 395 of the Code of Criminal Procedure respecting confessions. The confession of a defendant is not sufficient to warrant his conviction without additional proof that the crime charged has been committed. The independent proof need only establish the *corpus delicti;* it need not connect or tend to connect the defendant with it. (*People* v. *Deacons,* 109 N. Y. 374, 378; *People* v. *Roach,* 215 N. Y. 592, 600.)

That the prosecutrix had with her some man as her husband was no evidence of corroboration against this defendant, unidentified.

As the other evidence of corroboration in this case was somewhat slim at the best, it cannot be said that this error in the refusal to charge was harmless.

Neither can it be said that the request only applied to corroboration of the prosecutrix generally and not to the element of seduction. The request was preceded by the following, which was charged by the court:

" I request your Honor to charge the jury that the law is that before they can convict they must find such

corroborating evidence in this case, both as to the fact that there was sexual intercourse and that there was a promise of marriage which was used to accomplish the sexual intercourse."

After this follows the request above quoted and about which I am writing. It is clear to see, therefore, that the corroboration referred to was the corroboration of the testimony required by the Penal Law.

Just what is meant by general corroboration as distinguished from that required by section 2177 I do not quite comprehend. The posing of some man as the lady's husband without identifying him in any way is neither corroboration of the promise to marry or of intercourse as against the defendant. What does it corroborate? If the doctor had said she were pregnant, his testimony might help to establish that she had been with some man, so too, if he had said that she were no longer a virgin. But there is no such evidence in this case. The doctor fails to give the result of his physical examination, merely repeating Miss Levine's conversation with him, and his advice to them in these words:

" I told him what was to be done, or I said if she was willing to suffer pain a little longer, it probably may pass off." In fact it is apparent that the evidence of the doctor was only sought for the purpose of proving an acknowledgment by Miss Levine's companion that he was her husband.

Such attempted corroboration comes fairly within this sentence from the *Page* case: "A witness cannot generally be corroborated by proving declarations made out of court of the same facts testified to in court." (p. 275.)

One other request was made which we also think should have been charged. It appeared from the testimony of one Mildred Slote that she was at the dining-room table having a meal with Miss Levine and Mr. and Mrs.

Levine and the baby when the defendant who was present stated in reply to a question as to the time of his marriage with Miss Levine that

" Physically, spiritually, bodily and morally they were married, ritually they would be married very soon."

No attention apparently was given to this remark by any one present; the conversation went on just the same without comment. It was said upon the trial that this was a confession by the defendant of his guilt and an acknowledgment of sexual intercourse with Miss Levine. The court was asked to charge as follows:

" I ask your Honor to charge that if they find that the words ' spiritually, physically and morally married ' were employed, still, if they find that they were used at a time and under such such circumstances as to indicate that they were not intended by the defendant as an assertion that he had had sexual intercourse with the prosecutrix, that they cannot then consider such testimony as being corroborating evidence of the act of sexual intercourse.

" The Court: Refused."

If the statement made by the defendant were meaningless or stated as a joke, or under such circumstances as to indicate to any one that it was not a confession of guilt, certainly the jury would not be justified in considering it as corroboration or as an admission of a fact. To refuse this request in our opinion was error. People will indulge occasionally in silly talk and joke by exaggeration. Such remarks could not be taken as admissions of actual occurrences if so stated that nobody would or did believe them. The request, we see, assumes them to be so spoken. The next request, which was charged, did not cure this error, as the jury were simply told that they might determine for themselves what the words meant. If they should determine, however, that they meant nothing — mere idle talk — yet, the court said they could use them

as corroborating evidence required by the law.   This is what the two requests amount to read together.

We need not discuss the other exceptions.   Sufficient has been stated to lead us to the conclusion that a new trial should be granted.   All that Miss Levine says may be true — the defendant did not take the stand and her story is not improbable or suspicious.   Yet the law for years has required that the most likely story of the woman in these cases must be corroborated, and we are not justified in weakening this wise provision in order to reach a man whom all may think to be in the wrong.

The judgment should be reversed and a new trial granted.


McLaughlin, J. (dissenting).   The defendant was convicted of the crime of seduction under promise of marriage. The judgment of conviction has been unanimously affirmed by the Appellate Division and defendant now appeals to this court.

The statute under which the conviction was obtained provides as follows:  " A person who, under promise of marriage,  *  *  *  seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by imprisonment for not more than five years, or by a fine of not more than $1,000, or both." (Penal Law, section 2175.)   A conviction, however, cannot be had upon the testimony of the female seduced, unsupported by other evidence.   (Penal Law, section 2177.)   The unanimous affirmance of the judgment of conviction by the Appellate Division conclusively establishes, so far as this court is concerned, that the testimony of the female seduced was supported by other evidence.   (*People* v. *Willett*, 213 N. Y. 368; *People* v. *Sweeney*, 213 N. Y. 37.)

But it is urged that certain errors, to which exceptions

32

**498** PEOPLE v. TALEISNIK.

were taken, were committed at the trial which call for the reversal of the judgment of conviction. Only two of these alleged errors are relied upon in the opinion of Judge CRANE and they seem to me to be the only ones of sufficient importance to merit consideration. The first relates to a request to charge with reference to the testimony of Doctor Huber and the second to a request to charge with reference to the testimony of the witness Slote. These two alleged errors will be considered in the order named, but in order to appreciate what seems to me to be a proper consideration of them it is necessary to briefly consider some of the evidence set out in the record.

Helen Levine in April, 1917, then between twenty-one and twenty-two years of age, after a short courtship accepted defendant's offer of marriage. The engagement was publicly announced. It was recognized and generally understood by the immediate relatives and friends of both of the parties. The defendant after the engagement treated Miss Levine as a prospective bride. He frequently called upon her, took her to places of amusement, gave her money from time to time, also different articles of clothing and in a general way assisted her in selecting and obtaining her wedding trousseau. The relation thus started, according to her testimony (defendant was not sworn at the trial nor was any witness produced in his behalf), continued until the night of the seventh of June following the engagement when he took her to a theatre. On their return to her home, which was in her brother-in-law's apartment, he went with her to her bedroom where he had frequently been before and induced her, in view of their prospective marriage, to have sexual intercourse with him. She testified that the act caused her much pain and discomfort, which fact was made known to him and shortly thereafter, at his suggestion, they consulted Doctor Huber, a physician in the city of New York. Upon entering the doctor's office, the

defendant stated to him that the woman was his wife and that she experienced severe pain when sexual intercourse took place and that they had come to him for the purpose of ascertaining what the trouble was. The doctor took her into a private room in the office and made an examination of her person, at the conclusion of which he stated to both of them that the cause of the pain and discomfort was not uncommon with young girls recently married; that it could be relieved by treatment, but if she could put up with it for a short time, in his opinion, it would disappear; that thereupon they left agreeing to return, which they never did

Doctor Huber was sworn as a witness and he corroborated the testimony of the complaining witness as to her visit to his office with a man, what was said, the examination which he made of her person and the advice which he gave. He was then asked if he could identify the defendant as the man who accompanied her to his office and he said he could not. He did state, however, that he had known Miss Levine for upwards of fifteen years and that the occasion in question was the only time she had been to his office with a man, which also corroborated her statement to the same effect.

In submitting the case to the jury the trial court was requested to charge that the jury could not " consider the testimony of Doctor Huber or any part of it as being corroborating evidence in this case." The request was refused and an exception taken. I think the request was properly refused. It was equivalent to a motion to strike out all of Doctor Huber's testimony and there certainly was in it some evidence of corroboration. His testimony, as to the examination he made and what the examination disclosed, was admissible as showing a circumstance which tended to corroborate her testimony as to the illicit intercourse with the defendant. That such testimony was admissible is established by *People* v. *Orr*

(92 Hun, 199; affirmed, on opinion below, 149 N. Y. 616). Nor does the decision in *People* v. *Page* (162 N. Y. 272) hold otherwise. In this connection, it may be a matter of interest to note that the sentence quoted from the opinion in the *Page* case by Judge CRANE did not receive the approval of a majority of the court. Indeed, a majority of the court did not approve of the opinion. Only two members agreed with the writer of the opinion; two concurred in the result; one dissented and the seventh did not sit.

It has many times been held in prosecutions for rape that it is proper to show the physical condition of the person raped, not that such physical condition tends to show the prepetrator of the crime but that the crime has been committed. So here it was competent for the People to show by an examination of the complaining witness made within a very short time after the offense is alleged to have taken place, that some one had had illicit intercourse with her and to this extent, at least, Doctor Huber's testimony corroborated her. It tended to show or at least the jury would have had a right to draw an inference that she had recently had illicit intercourse with some man, and from that and the other evidence in the case that the defendant was the person.

The second alleged error, as indicated, relates to a request to charge with reference to the testimony of the witness Slote. In this connection it appears that sometime after the crime is alleged to have been committed, and when it may fairly be inferred that there were rumors as to the danger of the engagement being broken, the witness Slote while taking lunch with the defendant, the complaining witness and several other persons, asked the defendant when he was going to be married to Miss Levine and he replied, according to her testimony, " physically, spiritually, bodily and morally they were married, ritually they will be married very soon." The

court was asked to charge, referring to this conversation,
" that if they find the words ' spiritually, physically and
morally married ' were employed, still if they find that
they were used at a time and under such circumstances
as to indicate that they were not intended by the defend-
ant as an assertion that he had had sexual intercourse with
the prosecutrix that they cannot then consider such
testimony as being corroborating evidence of the act of
sexual intercourse."

The request was refused and an exception taken.
Personally, I do not think error was committed in refusing
this request. The intent of the defendant in using the
words had to be determined largely from what the
words indicated, taken of course in connection with all the
surrounding circumstances. But if it be assumed that
error was thus committed it did not harm the defendant,
and under section 542 of the Code of Criminal Procedure
should be disregarded. The court had correctly charged
the jury down to this point and immediately following
the refusal to charge, defendant's counsel made the
following request: " I request your Honor to charge
that under the law they have the right to *consider that*
and to say whether those words were employed and what
they meant if they were employed." The court responded,
" I so charge you, gentlemen." What the counsel had
in mind by the use of the words " the right to consider
that " was what he had asked the court to charge in the
preceding request. The court, in charging the latter
request, adopted counsel's suggestion and the jury must
have so understood it. The latter request as charged
was favorable to the defendant and fully protected his
rights so far as the testimony of the witness Slote was
concerned.

I think there was sufficient corroboration in this case.
Corroboration may be by circumstantial evidence. (*Boyce*
v. *People*, 55 N. Y. 644; *People* v. *Gumaer*, 80 Hun, 78.)

In actions of this character, the sexual intercourse and the immediate persuasions and inducements to bring about consent are very rarely proved by the evidence of third persons. They must from the necessity of the case be inferred from all the facts and circumstances connected with the parties involved; that the man had the opportunity and that the relation of the parties was such that there was likely to be that confidence on the part of the woman which induced her to consent. (*Armstrong* v. *People*, 70 N. Y. 38.)

The testimony of the witnesses Kaplan and Weinberg in a large measure corroborates the complaining witness. Kaplan and Weinberg were mutual friends of the parties. Each, having heard that the engagement was broken, sought to bring about a reconciliation and they, or at least one of them, after accusing the defendant of having ruined the complaining witness and having "lived with her as man and wife," suggested that he ought to marry her. The response which the defendant made to the suggestion was that the matter had gone too far; that she had dragged him into court (which must have referred to the institution of the present proceeding since no other is suggested); that he had offered her $1,500 and a year's rest, and to support her with good food and clothes if she would not go to court; that she had gone to court and he would not marry her.

This testimony, which is uncontradicted, taken in connection with the other evidence in the case, I think fairly establishes the guilt of the defendant. He had a fair trial and there are no errors which call for a reversal. The judgment should be affirmed.

COLLIN, CUDDEBACK and HOGAN, JJ., concur with CRANE, J.; HISCOCK, Ch. J., and CHASE, J., concur with McLAUGHLIN, J.

Judgments reversed, etc.