Van Voorhis, J.
The prosecution has conceded that the defendant is no vice lord, but just a shallow and irresponsible youth who managed to live for a number of months according to the style to which he wanted to be accustomed, with a comparatively small amount of financial aid from one prostitute known as Pat Ward. The criminal charge which has thus far been sustained against him depends upon activities tending to cause her to enter or to remain in that occupation. The indictment charged, and the jury found, that he induced her and a woman named Marguerita Cordova to lead lives of prostitution in violation of subdivision 2 of section 2460 of the Penal Law. The Appellate Division reversed his conviction on the Cordova count and affirmed his conviction on the Ward count. Both the People and the defendant have appealed to this court.
Our problem in analyzing the case stems in considerable part from the draftsmanship of section 2460 of the Penal Law. The principal object of this statute and its forerunners is to get the tycoons of organized vice, which it is conceded that Jelke was not, men such as the defendant in People v. Luciano (277 N. Y. 348). The main purpose is not to reach the lowly pimp. To be sure, subdivision 8 of section 2460 is aimed at such unlovely characters, but defendant has not been convicted under that subdivision. The purpose has frequently been adverted to in opinions of the courts, e.g., “ The legislation dealt with the systematizing of prostitution and concubinage upon a commercial basis; it sought to prevent prostitution and concubinage as a business ”. It was designed to punish those “ conscienceless vampires who make merchandise of the passions of men ” (People v. Draper, 169 App. Div. 479, 484, per Woodwabd, J.). In that case a judgment of conviction was reversed and an indictment dismissed which charged a defendant with procuring male partners for several wayward girls whom he urged to take money which he did not share. In considering section 2460 of the Penal Law, as it then was, the Appellate Division, Third Department, described it as “ obviously a patchwork affair ”, and referred to its “ botchy and immaterial provisions ” (p. 488). The court there found it impossible to apply individual parts of section 2460, unrelated to the whole, stating (p. 485): “ No one subdivision is to be picked out and literally applied as the district attorney, or even the parties, may suppose it to read, but the entire section, relating to one general *327 subject, is to be read and interpreted * * * and so we are to give such construction to subdivision 3 of the act, under which this indictment was found, as the act, considered as a whole, suggests.”
A similar thought was thus expressed by Queens County Judge Coldeíí, as he then was, in People v. Odierno (166 Mise. 108, 112): “ The evolution of section 2460 of the Penal Law, as it now exists, constitutes an attempt on the part of the Legislature to cope with the evil of commercialized prostitution. The statute in question was not intended to place the erring male at the mercy of the erring female, nor was it directed against individual or isolated acts of prostitution. Bather was it directed against influential offenders whose business was gain through prostitution; its purpose was to reach the systemization of prostitution on a commercial basis.” (Italics from original.)
After these preliminaries, we come to the precise charge against Jelke; but in order to focus upon that, it is necessary to state the criminal aspects as defined by section 2460 with which Jelke is not specifically charged in the indictment. He is not charged with importing or exporting women or girls from the State for immoral purposes in violation of subdivision 1; nor with inducing or attempting to induce or procure any woman or girl to enter a house of prostitution under subdivision 3 (the word “ or ” has been written out of this subdivision by People v. Draper, supra, p. 490); nor with receiving money for placing a woman in a house of prostitution in violation of subdivision 4 ; nor with paying money to acquire a woman for this purpose in violation of subdivision 5; nor with receiving money to place a woman in the custody of another for immoral purposes in violation of subdivision 6; nor with detaining or attempting to restrain a woman in a house of prostitution to work off a debt in violation of subdivision 7; nor has he been charged with accepting money, without consideration, from the earnings of a woman engaged in prostitution in violation of subdivision 8.
Neither has defendant been charged with several of the aspects of this crime which are described in subdivision 2, under which this indictment is laid. Thus he is not charged with placing a woman in the custody of another with intent that she shall live a life of prostitution, nor with inducing her to reside with him or in a house of prostitution to the same end. This indictment is founded exclusively upon the remaining *328 language of subdivision 2, to wit: “ Any person who shall * * * compel or attempt to induce, entice, procure or compel her to live a life of prostitution shall be guilty of a felony
It seems to be impossible, as Justice Woodward’s opinion said in People v. Draper (supra), to differentiate entirely between all of these different aspects of this crime, although each subdivision states that the aspect of the crime of “ compulsory prostitution of women ’ ’ which is defined therein is separately punishable. It would be almost impossible for a defendant to be tried under any of these subdivisions without violations of other subdivisions being introduced against him as evidence of his having committed the specific crime with which he has been charged.
The first point raised by appellant’s counsel is that the matter upon which he stands convicted does not constitute a crime under subdivision 2 of section 2460 of the Penal Law. The reason is that the language above quoted from this part of the statute is said to create a crime only where a defendant attempts to induce a woman to live a life of prostitution but without succeeding in doing so. The first and eighth counts of the indictment, which alone survive, charge that within periods of time therein specified, in the county of New York, defendant did “ compel, induce, entice and procure, and attempt to induce, entice, procure and compel a female, to wit, one Pat Ward * * * [Marguerita Cordova in the eighth count], to live a life of prostitution.”
The argument is made that except where a defendant compels a woman to live a life of prostitution (which is not claimed here), only an attempt comes within this statutory definition. Insofar as this indictment charges that defendant succeeded in inducing these women to lead lives of prostitution it is said to be based upon no statutory authority. In other words, the contention is that inducing a woman to live a life of prostitution is not a crime under this clause in subdivision 2, and that the only crime described in this statutory language -is attempting to accomplish that result. But even so much of the indictment as charges an attempt is claimed to be bad, in view of the rule that the law does not recognize any crime in attempting to do something which, if it were successfully accomplished, would not be a crime. Based upon this premise, appellant’s counsel cites such cases as People v. Jaffe (185 N. Y. 497) and People *329 v. Teal (196 N. Y. 372), holding that there can be no conviction of an attempt to commit a crime where the attempt, if successful, would not constitute a crime. Therefore, it is argued, inasmuch as inducing a woman to lead a life of prostitution is not a crime under this clause in the statute, consequently it cannot be a crime to attempt to induce her to do so.
This is further demonstration that the language of this statute is “ botchy ”, to quote Mr. Justice Woodward. But it does not follow that appellant’s argument is sound. People v. Jaffe and People v. Teal (supra) hold merely that under sections 260 and 261 of the Penal Law, an attempt to do something is not a crime where the acts charged would not constitute a crime if the attempt had succeeded. Thus, in the Jaffe case, although the defendant received what he thought were stolen goods, it was held that he could not be convicted of the crime of an attempt to receive stolen goods knowing them to have been stolen if, after the theft had been committed, they had been restored to the true owner who offered them to the defendant to entrap him. The point was not that he was exonerated on account of having been entrapped, but, rather, that it was not a crime for him to have received these goods from the true owner, and that therefore he could not be convicted of an attempt to do something which would not have been a crime. He succeeded in what he attempted, but what he did was not criminal. It was like selling oil stock and being surprised to discover that oil was actually in the ground where the accused vendor had represented but not believed it to be. In People v. Teal (supra) the defendant was held not guilty of an attempt to commit subornation of perjury where the false testimony solicited, if given, would have been immaterial and hence not then perjurious. Those decisions have nothing to do with the present case. Here the attempt to induce a woman to lead a life of prostitution is what is defined by statute as constituting the crime itself. Therefore an attempt which is successful is just as much a crime as an attempt which fails. In the District Attorney’s brief, analogies are cited of other statutes defining the crime charged as consisting in the attempt. It is hardly necessary to recite these analogies, inasmuch as the distinction is so clear. This is not the case of ‘[1] An act, done with intent to commit a crime, and tending but failing to effect its commission ” (Penal Law, § 2), which is the basis for prosecu *330 tions under sections 260 and 261 of the Penal Law, There, obviously, the attempt is only made a crime insofar as it is an attempt to commit a crime. If, as here, the statutory definition of the essence of a crime is the attempt to do a certain act, the crime is committed regardless of whether or not the act is performed. There must, of course, be some overt act constituting the attempt; the defendant must not just think about doing it in his own mind; but if he engages in conduct which spells out an attempt which is made criminal by statute, that is all that is necessary. So long as the statute defines the crime as consisting in the attempt, the crime is committed if the attempt is made, regardless of whether it is successful and even regardless of whether the objective would be criminal apart from the attempt. We do not venture to give an all-inclusive definition of what acts constitute an attempt of this kind. More is required than patronizing a prostitute; the issue is not always necessarily determined by what the woman was before she came into contact with the defendant, nor after she separated from him. In this context, the Trial Judge charged the jury that the defendant could be guilty regardless of the previous character of the woman if he successfully induced her to live a life of prostitution — if she was not then a prostitute ■— or encouraged and assisted her to live a life of prostitution if she was already a prostitute, or if he attempted to do any of these things. At another point the jury were instructed that “ if you conclude that she did live a life of prostitution while she was acquainted with defendant, but you entertain a reasonable doubt as to whether she so lived it because of the inducement, enticement or procurement of the defendant then you will acquit the defendant on the Pat Ward count.”
The latter instruction may not have been entirely consistent with the idea that the statute renders criminal an attempt, regardless of whether the attempt has produced an effect upon the life of the woman. If there was any error in giving the instruction to the jury which has been quoted, it was not prejudicial to the defendant. The sensible interpretation of this statute is that an attempt is not made to induce a woman to lead a life of prostitution if all of the circumstances, including the previous life of the woman, make it apparent that nothing which a defendant has done would have tended to alter the course of her life in this respect. That was the upshot of the *331 instructions which were given to the jury in this case. No exception was taken to the part of the charge that subdivision 2 of section 2460 of the Penal Law may be violated despite the fact that the female has in the past been a prostitute. Other portions of section 2460 are necessarily and entirely unrelated to whether a woman has had such a previous record. We are not called upon to decide whether, under the particular clause underlying this indictment, the evidence concerning the previous character of the woman might ever be such as to require a dismissal of the indictment. We are not confronted with that question here due to the lack of an exception, and on account of the circumstance that Pat Ward was but 18 years of age which, if an exception had been taken, would have made it a question of fact under the other facts of this case whether she had become a confirmed prostitute when she met Jelke.[1] Under the charge as it was delivered to the jury, they were directed to acquit the defendant if they entertained a reasonable doubt concerning whether she lived a life of prostitution due to his inducement, enticement or procurement. That left it in the province of the jury to acquit if they found that her previous character was such as to render it improbable that what defendant did would affect her course of conduct in this department of her life. If the jury considered that she would have lived a life of prostitution anyhow during the interval while she was associated with defendant, without being likely to have been affected by anything which he did, then, under the charge, they were to find him not guilty.
It is argued that the likelihood is remote that Pat Ward would have conducted herself very differently during these months if she had never met defendant, and that the jury were inflamed against him by the repulsiveness of his behavior. If the verdict were to be set aside as the product of passion or prejudice on the part of the jury, that would have been in the power of the Appellate Division. We have no jurisdiction to decide the ease on any issue of fact.
*332 The next point in appellant’s brief concerns the subject of corroboration. Subdivision 9 of section 2460 of the Penal Law provides: “No conviction shall be had under this section upon the testimony of the female unless supported by other evidence.”
This clause is largely analogous to sections 2013 and 2177 of the Penal Law requiring corroboration of the testimony of the prosecutrix in trials for certain sex crimes. More is required than is necessary to corroborate a confession under section 395 of the Code of Criminal Procedure, where the corroboration is sufficient if it supports the existence of the corpus delicti (People v. Cuozzo, 292 N. Y. 85). The corroboration of the testimony of an accomplice under section 399 of the Code of Criminal Procedure must tend “ to connect the defendant with the commission of the crime.” People v. Taleisnik (225 N. Y. 489, 493-494) held that under section 2177 of the Penal Law, the corroboration required on a charge of seduction under promise of marriage must be such as tends to connect the defendant with the sexual act. Citing that and various other decisions, such as People v. Plath (100 N. Y. 590, 593-594) and People v. Guardino (286 N. Y. 132, 137), defendant’s counsel urges that it was incumbent upon the People by such corroboration to prove each of the facts constituting the crime, and that it was not sufficient for the Trial Judge to have charged the jury in regard to such corroborative evidence as he did, that “It is sufficient if there is some evidence applying to the identity of the accused as a participator; that fairly tends to connect a defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the female is telling the truth. The corroboration is not restricted to any particular material point. ” This instruction, that corroboration is necessary tending fairly to connect the defendant with the commission of the crime, amounted (under the circumstances of this case) to instructing the jury that the corroboration must extend to every material fact essential to constitute the crime. It is undisputed that Pat Ward and these other women were engaged in prostitution. Ample corroborative testimony establishes that fact. Defendant’s counsel even insisted upon the point in urging that his client did not induce Pat Ward to become a prostitute for the reason that she was one already. When the trial court charged the jury, therefore, *333 that the corroboration must extend to connecting Jelke with the commission of the crime of attempting to induce her to lead a life of prostitution, that referred to the only remaining material fact constituting the crime with which defendant was charged. Thus it is clear that there was no error here even if the law be as defendant’s counsel contends.
The other exceptions to the charge or to refusals to charge are not well taken. Necessarily the instructions concerning the whole subject of corroboration were complex. Not only was it necessary to instruct the jury concerning the corroboration of the testimony of Pat Ward and Marguerita Cordova required by subdivision 9 of section 2460 of the Penal Law which has been discussed, but also the court had to charge the jury regarding the corroboration of the accomplice testimony. It is settled that these prostitutes could corroborate one another, that they themselves were not accomplices of defendant or of one another with respect to the charges preferred by these counts against defendant (People v. Guardino, 265 App. Div. 872, affd. 290 N. Y. 749). Erica Steel, however, was charged with being an accomplice of defendant in inducing Pat Ward to lead a life of prostitution, and the witness Richard G-. Short was charged with being an accomplice of defendant in inducing Marguerita Cordova. Therefore Steel could not corroborate Short nor could Short corroborate Steel. That is relatively unimportant, since they testified mainly on different subjects. The defendant could not be convicted under the first count on the testimony of Erica Steel alone, nor under the eighth count on the testimony of Richard Short alone. Neither could he be convicted under the first count on the testimony of Pat Ward alone, nor under the eighth count upon the testimony of Marguerita Cordova alone. Ward and Cordova required corroboration not as accomplices but under subdivision 9 of section 2460 of the Penal Law; Steel and Short had to be corroborated as accomplices under section 399 of the Code of Criminal Procedure. It followed, however, that, inasmuch as these witnesses were required to be corroborated under different statutes and for different reasons, Pat Ward could corroborate Erica Steel’s testimony, and vice versa, and it likewise followed that Marguerita Cordova could corroborate Richard Short’s testimony against the defendant and vice versa. This was explained to the jury in the charge in accurate detail.
*334 It is not remarkable that the jury reported that the necessarily complicated instructions about corroborative witnesses were a bit confusing to them, and that they requested that those portions of the charge he reread. This was done. Thereafter the foreman of the jury inquired whether the testimony of a corroborating witness could be believed if the testimony of the witness to.be corroborated was not believed, adding: “ In other words, you state about corroboration of the witness, say Ward. Now, if Ward’s testimony is not believed, what happens with the corroborating witness? ”
The court correctly told the jury that they were to consider them both together, that there might be something in the corroborating testimony giving basis to believe in the main testimony, but that “ if you don’t believe the main testimony, then that’s the end of it.”
Defendant’s counsel thereupon requested the court to charge that if they do not believe the main testimony of Pat Ward, they must acquit, to which the court replied ‘ ‘ I am not charging that far.” Appellant’s brief urges that the refusal to grant this request was inconsistent with the instruction previously given. Perhaps it would have been better if the Trial Judge had charged this request. It could have done no harm in this context, and would have obviated this disputation. But, strictly speaking, the trial court was correct in refusing this request. He had previously told the jury that if they did not believe “ the main testimony ”, in spite of the corroboration, that was the end of it. This was in answer to the jury’s inquiry, and meant that it was for the jury to consider the main testimony upon any particular point in conjunction with whatever corroborating testimony bore upon the same point, and that the significant thing was whether they believed that the essential fact had or had not been established. They were to decide whether or not the particular fact had been established as a fact upon the basis of the ‘ ‘ main ’ ’ and the ‘ ‘ corroborating ’ ’ testimony on that point. The use of these words 11 main testimony ” were in that context. When, afterward, defendant’s trial counsel transposed these words and infused them with further meaning by requesting an instruction that if the jury “ don’t believe the main testimony of Pat Ward, that they must acquit ”, it was going beyond what the Trial Judge had been discussing. Instead of referring to the “ main testimony ” *335 in contradistinction tp the il corroborating testimony ” upon any particular fact or factor in the case, defense counsel transposed these words so as to refer to “ the main testimony of Pat Ward”. That introduced a different idea, and instead of referring to the principle of decision to be applied by the jury in analyzing any specific item of evidence, amounted to asking for an instruction that if the jury believed that in general Pat Ward was not telling the truth they were to acquit. Such an instruction would have been too indefinite, and would have been subject to the criticism which was made in People v. Chartoff (72 App. Div. 555) of an instruction that “ When you have determined who it is that tells the truth, you have determined the guilt or innocence of these parties.” There was no real inconsistency between the refusal to charge defendant’s counsel’s request and the instruction which the Trial Judge had given a moment before.
The last exception of any consequence to the charge is that the corroborative testimony was insufficient as a matter of law. This is closely related to appellant’s point that defendant’s guilt was not established beyond a reasonable doubt. With respect to the eighth count, involving Marguerita Cordova, such corroboration as there was came from Patricia Thompson and her husband Richard G-. Short. We are not deciding a civil action but a criminal prosecution. The presence in the record of some evidence is not sufficient to warrant the submission of a criminal case to the jury; and whenever a criminal charge is submitted to the jury, against the objection and exception of the defendant, upon proof which falls below the statutory standard of rebutting the presumption of innocence and of proving guilt beyond a reasonable doubt, a question of law is presented (People v. Ledwon, 153 N. Y. 10). Here the evidence is simply that the defendant gave Marguerita Cordova a list of names, that he introduced her to Short and Pat Thompson as his new girl, that he suggested that she assume the professional name of Marie Corday, but that the next day she changed her mind and decided to abandon any such course of action. How much of this talk about a professional name and the other details was just silly banter is hard to be sure. Cordova did testify that several months later she had sex relations with one of the men whose names had been given to her by defendant, for which she received money, but there is no testimony or *336 contention that defendant received any part of her fee nor is the circumstance that she had relations with this man corroborated in any manner. Short’s and Thompson’s testimony did not extend to all phases of this matter. We think that the Appellate Division correctly held that this proof fell below the standard of what should be required as matter of law to prove guilt beyond a reasonable doubt in the case of the eighth count in this indictment.
It is otherwise regarding Pat Ward. Although it is vigorously contended that this girl had been depraved from at least the age of 16 (she was 18 when she met Jelke), that she would have lived a life of prostitution regardless of anything that the defendant did, in this case that was a question of fact for the jury. There is corroboration from the other prostitutes not only that he countenanced her having sex relations with numerous other men for money, but also that he assisted and participated in her earnings. It is, of course, not sufficient that the defendant procure men as clients for the woman to render him guilty on this charge, he must have procured the woman to be a prostitute. Nevertheless, the evidence that he kept books and records of prospective clients or customers for Pat Ward, that he contacted these men upon a number of occasions, that he received some of her earnings as a prostitute, that he entrusted her to the custody of Erica Steel to supervise her activities for defendant’s benefit while he and Steele’s consort went to Florida, the cashing of a check at one of the night clubs made to Pat Ward by one of her clients and indorsed “ O. K. Minot F. Jelke ”, the fact that she used Jelke’s apartment with his consent to have sex relations with clients from which there is corroborative evidence that he benefited financially, the complex relationship between defendant and all of these prostitutes and their procurers (defendant, rather than Pat Ward, appears to have been first linked to the California crowd) together with other evidence in the record including the payment by defendant of some of Pat Ward’s charges for her telephone exchange service, leads to the conclusion that there was sufficient corroborative evidence before the jury to sustain this conviction under count one.
Jelke evidently enjoyed the tinsel of New York City cafe society. Although he had some $27,000 at his disposal during these six or seven months from bank loans, gifts or loans from *337 relatives, and income from trust funds in addition to anything which he received from Pat Ward, he nevertheless spent some of her earnings in their fast, short life together. He probably thought little about the future but expected to come into money, and wanted to hold Pat Ward somehow in the meantime. Her designs on him may not have been beyond reproach. When she found herself rejected early in 1952 in Florida she became vindictive. Nevertheless Jelke is not to be excused for what he has been found to have done, which the jury decided had an influence upon her life as a prostitute.
It was not error to have restricted the cross-examination of these prostitutes concerning what happened to them after March, 1952, when Jelke’s relationship with Pat Ward ended. There is no doubt that these women were all prostitutes. Most of them invoked the Fifth Amendment when asked concerning this phase of their lives, which would have ended that line of cross-examination in any event. Their subsequent activities constituted a collateral issue concerning which the discretion of the Trial Judge might well have been exercised as it was. The same applies to the exclusion of the wire tap of Pat Ward’s conversation with one Emanuel Trujillo.
Reversible error would have been committed in permitting the assistant district attorney to read to the jury part of Pat Ward’s “Life Story” as told to the tabloids after the first trial, except that on cross-examination defendant’s counsel made reference to such material. He introduced it by referring to an autobiographical declaration that defendant said not a word during a night club conversation in which she charged that Ray Russell Davioni urged her to engage in prostitution. Upon redirect examination, the prosecutor called her attention to other portions of her life story as told to other papers or magazines in which she had said the opposite. By referring to this material upon cross-examination, defense counsel opened the door to what occurred upon the redirect examination.
The declarations of Ray Russell Davioni which were introduced in evidence were admissible, in view of testimony from which it might be inferred that Davioni and defendant collaborated in this undertaking.
The charge incorporated whatever was contained in defendant’s written requests that needed to be charged.
*338 The order and judgment of the Appellate Division should be affirmed.
Conway, Ch. J., Desmond, Dye, Fuld, Froessel and Burke, JJ., concur.
Order and judgment affirmed.

. People v. Fegelli (163 App. Div. 576, affd. 214 N. Y. 670), which is cited by respondent as holding that section 2460 of the Penal Law encompasses encouragement of experienced prostitutes to continue their profession, was decided under subdivision 8, making it a crime to receive money without consideration from the earnings of prostitutes. Defendant is not charged under that subdivision.