Bobby BANDY and Larry Bandy,
Petitioners,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

Jan. 2, 1979.

Charles H. Beaty, Robert L. Swann, Phillip A. George, Gallatin, for petitioners.

Brooks McLemore, Jr., Atty. Gen., William O. Kelly, Asst. Atty. Gen., Nashville, for respondent.

## OPINION

FONES, Justice.

Defendants were convicted of concealing stolen property valued at less than one hundred dollars and sentenced to serve not less than one nor more than five years. The Court of Criminal Appeals affirmed the convictions. Our grant of certiorari was limited to defendants' first assignment of error asserting, in substance, that the property had lost its status as stolen property because it had been recaptured by the police before it came into defendants' hands with the result that an essential element of the crime was missing.

The evidence adduced at trial showed that defendant Bobby Bandy requested Gary Rogers to steal E–9 herbicide for him from the Sumner County Farmer's Co-Op. On March 22, 1976, Rogers burglarized the Co-Op but could not obtain the requested herbicide and instead stole a socket wrench set. The following day, Rogers telephoned Bandy to inform him of the items that he had stolen. Bandy told him to bring the stolen goods to him.

Rogers subsequently went to the Gulf service station where he was employed, and was questioned by Detective Beasley concerning recent C.B. radio thefts in the area. As a result of his questioning, Beasley was allowed to search a car belonging to Leon McCoin, in which Rogers had stored the socket wrench set and jumper cables and cattle prods that he previously had stolen. Upon discovering the property and further questioning of Rogers, Beasley persuaded him to cooperate with police and set up an appointment with Bandy for 7:00 that evening at Bandy's package store.

Pursuant to the police plan, Rogers drove to Bandy's store with Detective Beasley hidden in the car's trunk. Upon arrival Bandy directed Rogers to follow his pickup truck down the Old Saw Mill Road. At this time, Bandy's uncle, Larry Bandy, arrived and followed in his pickup truck closely behind Roger's automobile. Shortly thereafter, Bobby Bandy stopped his vehicle at a secluded area and told Rogers to give him the stolen goods. Bandy put the goods in his car's trunk, at which point Detective Beasley appeared and with the aid of two other policemen who had been conducting surveillance of the transaction, arrested defendants.

■ This is a case of first impression in this State. In affirming the convictions, the Court of Criminal Appeals recognized that cases in other jurisdictions have established the rule that a conviction of receiving or concealing stolen property cannot be sustained where the evidence shows that the stolen goods have been recovered by the police and have lost their character as stolen property, nullifying an essential element of the crime. *See, e. g., United States v. Cawley*, 255 F.2d 338 (3d Cir. 1958); *Felker v. State*, 254 Ark. 185, 492 S.W.2d 442 (1973); *People v. Jaffe*, 185 N.Y. 497, 78 N.E. 169 (1906). Without citation of authority, the intermediate court held that a mere fortuitous event, unknown to defendants, should not allow them to escape the consequences of their criminal intent and criminal acts, in furtherance thereof. Our research reveals that while no jurisdiction supports that result, there is good authority to the effect that a defendant may be convicted of an attempt to receive or conceal stolen property notwithstanding the fact that, unknown to him, the stolen property has lost its character as such through recapture. *People v. Rojas*, 55 Cal.2d 252, 10 Cal.Rptr. 465, 358 P.2d 921 (1961), exemplifies that line of cases. There is a line of cases, however, that rejects conviction for an attempt to receive or conceal stolen property in the circumstances under consideration, following the 1906 landmark decision in *People v. Jaffe, supra*. We are persuaded that the reasoning and result of *Rojas* should be adopted in Tennessee.

Defendants rely on *People v. Jaffe, supra*, in which the court held, under facts identical to the case at bar, that an attempt to do an act which would not be criminal if completed could not itself be criminal regardless of the actor's intent. *Accord, United States v. Berrigan*, 482 F.2d 171, 187–90 (3d Cir. 1973); *People v. Jelke*, 1 N.Y.2d 321, 329, 152 N.Y.S.2d 479, 135 N.E.2d 213, 218 (1956); *Booth v. State*, 398 P.2d 863 (Okl.Cr. 1964). The reasoning of the *Jaffe* decision became the cornerstone of the doctrine of "legal impossibility", and courts have recognized a defense to inchoate crimes based on this doctrine.[1] In contrast, courts generally

---

1. The legal impossibility defense has been raised and approved in a wide variety of cases. *See, e. g., Wilson v. State*, 85 Miss. 687, 38 So. 46 (1905) (alteration of immaterial portion of draft did not establish attempted forgery);

*State v. Taylor*, 345 Mo. 325, 133 S.W.2d 336 (1939) (actor who bribed a person believed to be a juror, but who was not a juror, not guilty of attempt to corrupt a juror); *State v. Guffey*, 262 S.W.2d 152 (Mo.App.1953) (hunter who

have recognized that a "factual impossibility" would not provide a defense to an attempt crime. Thus a pickpocket could be convicted of an attempt to steal even though his victim's pocket was empty. *E. g., State v. Wilson*, 30 Conn. 500 (1862). Similarly, this Court has held that a defendant who had been observed to have opened a cash drawer could be convicted of attempt to commit larceny, despite the absence of evidence that there were money or other valuables in the drawer. *Clark v. State*, 86 Tenn. 511, 8 S.W. 145 (1888). *See generally* Annot., Impossibility of Consummation of Substantive Crime as Defense in Criminal Prosecution for Conspiracy or Attempt to Commit a Crime, 37 A.L.R.3d 375 (1971) and cases cited therein. These cases simply have recognized that the defendant was deserving of conviction just as much as if he had succeeded; the fortuitous circumstances that prevented the attemptor's success should not exculpate him. As one commentator astutely observed, "No sane man ever really attempts to do what he knows is impossible." R. Perkins, Criminal Law 489 (1957).

The "legal impossibility" doctrine in modern times uniformly has been discredited by commentators who point out the obvious problems in distinguishing between "factual" and "legal" impossibility and its distor-

tion of the underlying policy of attempt law.[2] In *People v. Rojas, supra,* the court struck a death knell for the legal impossibility defense and held that a defendant could be convicted of attempt to receive stolen goods even though police, prior to delivery, had recovered the goods. In *Rojas,* the court reasoned:

"In our opinion the consequence of intent and acts such as those of defendants here should be more serious than pleased amazement that because of the timeliness of the police the projected criminality was not merely detected but also wiped out. . . ." 10 Cal.Rptr. at 468, 358 P.2d at 924.

The *Rojas* decision has been approved recently in other jurisdictions. *See Darr v. People,* 568 P.2d 32 (Colo.1977); *Darnell v. State,* 558 P.2d 624 (Nev.1976); *State v. Niehuser,* 533 P.2d 834 (Or.App.1975); *State v. Carner,* 25 Ariz.App. 156, 541 P.2d 947 (1975); *State v. Tropiano,* 154 N.J.Super. 452, 381 A.2d 828 (1977).

We note that *Rojas* and its progeny are consistent with the Model Penal Code § 5.01(1)(a).[3] However, we do not adopt the Model Penal Code provision because its general application to attempt crimes would take us beyond the scope of the issues involved in this case.

---

shot a stuffed deer believing it to be alive had not attempted to take a deer out of season); *Foster v. Commonwealth,* 96 Va. 306, 31 S.E. 503 (1898) (defendant under 14 conclusively presumed incapable of committing rape and cannot be convicted of attempted rape).

**2.** *See generally* LeFave & Scott, Criminal Law § 60 (1972); Hall, General Principles of Criminal Law 586–99 (2d ed. 1960); Elkind, *Impossibility in Criminal Attempts: A Theorist's Headache,* 54 Va.L.Rev. 20 (1968); Hughes, *One Further Footnote on Attempting the Impossible,* 42 N.Y.U.L.Rev. 1005 (1967); Keedy, *Criminal Attempts at Common Law,* 102 U.Pa.L. Rev. 464, 476–89 (1955); Smith, *Two Problems in Criminal Attempts,* 70 Harv.L.Rev. 422, 435–48 (1957).

**3.** Section 5.01 of the Model Penal Code provides:
Section 5.01 Criminal Attempt
(1) *Definition of attempt.* A person is guilty of an attempt to commit a crime if, acting

with the kind of culpability otherwise required for commission of the crime, he:
(a) purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or
(b) when causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such result, without further conduct on his part; or
(c) purposely does or omits to do anything which, under the circumstances as he believed them to be, is a substantial step in a course of conduct planned to culminate in his commission of the crime.
For a discussion of the rationale of this section, see Wechsler, Jones and Korn, *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy,* 61 Colum.L.Rev. 571, 573–92 (1961).

■ The foregoing brings us to the result that the convictions of defendants for concealing stolen property cannot be sustained, but that the proof will support convictions for an attempt to conceal stolen property.

■ In *State v. Staggs*, 554 S.W.2d 620 (Tenn.1977), we held that T.C.A. § 39–603 is our general attempt statute and that an attempt is a lesser included offense within any felony or crime punishable by imprisonment in the State Penitentiary, unless the punishment is otherwise prescribed. That case also affirms earlier cases in prescribing three elements of an attempt crime: (1) an intent to commit a specific crime, (2) an overt act, and (3) failure to consummate the crime. *Gervin v. State*, 212 Tenn. 653, 371 S.W.2d 449 (1963); *Hall v. State*, 490 S.W.2d 495 (Tenn.1973); *Bennett v. State*, 530 S.W.2d 788 (Tenn.Cr.App.1975). The evidence here establishes that these requirements have been met; Bobby Bandy and Larry Bandy, as aider and abettor, did manifest an intent to commit the crime of concealing stolen goods. The acts of the defendants clearly went beyond mere preparation. *Cf. Dupuy v. State*, 204 Tenn. 624, 325 S.W.2d 238 (1959). Finally, there was a failure to consummate the substantive offense because of the fortuitous act of the police in taking protective custody of the goods and negating their stolen status, prior to delivery to defendants.

Pursuant to T.C.A. § 39–4218 the crime of receiving or concealing stolen property under the value of one hundred dollars is punishable by imprisonment in the State Penitentiary for not less than one nor more than five years, and it follows that our holding in *Staggs* brings an attempt to commit that crime within the general attempt statute, T.C.A. § 39–603.

■ In these circumstances appellate courts in Tennessee have authority to order a reduction in degree of the offense for which defendants were convicted when the evidence does not support the higher crime and does support the lesser included offense. *Corlew v. State*, 181 Tenn. 220, 180 S.W.2d 900 (1944); *Peters v. State*, 521 S.W.2d 233, 236 (Tenn.Cr.App.1974). However, *Corlew* requires that this Court reduce the punishment to the minimum prescribed for the lesser offense committed by defendants to avoid violation of "any beneficial right . . . secured to him by the Constitution, or the statute." 181 Tenn. at 224, 180 S.W.2d at 901. The punishment prescribed in T.C.A. § 39–603 is "imprisonment in the penitentiary not exceeding five (5) years, or, in the discretion of the jury, by imprisonment in the county workhouse or jail not more than one (1) year, and by fine not exceeding five hundred dollars ($500)." The imposition by this Court of the absolute minimum under that statute would be an absurdity. We must therefore resort to the procedure utilized in *Huffman v. State*, 200 Tenn. 487, 497–98, 292 S.W.2d 738, 742–43 (1956) by remanding this case to the trial court to allow the jury to fix the punishment under a charge that defendants are guilty of attempt to conceal stolen property and that their punishment is to be fixed under T.C.A. § 39–603. *See Lay v. State*, 501 S.W.2d 820 (Tenn.Cr.App.1973).

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.