IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 3, 2024 Session[1]

## STATE OF TENNESSEE v. CHRISTOPHER OBERTON CURRY, JR.

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Madison County
No. 21-634   Roy B. Morgan, Jr., Judge**

_____

**No. W2022-00814-SC-R11-CD**

_____

Christopher Oberton Curry, Jr. ("Defendant") sought this Court's review of his 2022 conviction for unlawful possession of a firearm after having been convicted of a felony crime of violence. Pursuant to Tennessee Code Annotated section 39-17-1307, unlawful possession of a firearm by a convicted felon is a Class E felony; however, if the prior conviction is for a felony *crime of violence*, the punishment is increased to a Class B felony. At Defendant's trial in the present case, the State introduced a certified judgment of conviction for Defendant's 2017 conviction for robbery, and the trial judge instructed the jury that robbery is a crime of violence. Robbery, however, is not included in the statutory definition of crimes of violence set forth in Tennessee Code Annotated section 39-17-1301(3). Defendant was convicted and received an effective ten-year sentence. On appeal, Defendant argues, among other things, that the evidence was insufficient to support his conviction because the State failed to establish that the predicate felony of robbery was a crime of violence. The Court of Criminal Appeals affirmed, concluding that robbery is a crime of violence despite its absence from the statutory definition of the term. We granted Defendant's application for permission to appeal to consider whether robbery is encompassed within the statutory definition of "crime of violence" and to determine whether the evidence at trial was sufficient to support Defendant's conviction. After review, we agree with the lower courts that robbery can be a "crime of violence" within the definition contained in section 39-17-1301(3). However, we conclude that whether robbery is a "crime of violence" in a particular unlawful possession of a firearm case is a question for a properly instructed jury, not the trial judge. Because the State did not present sufficient evidence from which a reasonable jury could conclude that Defendant's prior robbery was a crime of violence, we reverse, in part, the decision of the Court of Criminal Appeals and

_____

[1] We heard oral argument in this case at Cecil C. Humphreys School of Law in Memphis, Tennessee.

vacate the judgment of the trial court on Count 1. The case is remanded to the trial court for entry of a new judgment reducing the conviction in Count 1 to a Class E felony and for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed in Part; Case Remanded to the Trial Court**

ROGER A. PAGE, J., delivered the opinion of the Court, in which HOLLY KIRBY, C.J., and JEFFREY S. BIVINS, SARAH K. CAMPBELL, AND DWIGHT E. TARWATER, JJ., joined.

Brennan M. Wingerter, Assistant Public Defender – Appellate Director (on appeal); Brian D. Wilson, Assistant Public Defender; Jeremy B. Epperson, District Public Defender; and Parker O. Dixon, Assistant District Public Defender (at trial), for the appellant, Christopher Oberton Curry, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Andrew C. Coulam, Senior Assistant Attorney General; Edwin Alan Groves, Jr., Assistant Attorney General; Jody S. Pickens, District Attorney General; and Lee R. Sparks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. BACKGROUND[2]**

On August 20, 2021, Officer Zachary Cobb from the Jackson Police Department ("JPD") attempted to perform a routine traffic stop after he observed a white Honda Accord fail to stop at a stop sign and illegally pass another vehicle. The officer activated his blue lights and pursued the subject, but the driver, who was later identified as Defendant, failed to yield. Defendant eventually crashed his vehicle and fled on foot into a wooded area.

Officer Cobb was unable to apprehend Defendant, instead returning to the white Honda to search it for identifying information. Inside, the officer found Defendant's cell

---

[2] The facts recited in this section are included primarily for context. The pertinent facts are undisputed. For a more thorough recitation of the facts and trial testimony, see the Court of Criminal Appeals' opinion in this case. *State v. Curry*, No. W2022-00814-CCA-R3-CD, 2023 WL 3807168, at *1-2 (Tenn. Crim. App. June 5, 2023), *perm. app. granted*, (Tenn. Oct. 13, 2023).

phone and wallet, which contained Defendant's social security card. Meanwhile, another officer joined Officer Cobb at the crash scene with a police dog intending to track Defendant. The search for Defendant was unsuccessful; however, the officers recovered a 9-millimeter handgun discarded on the ground in the woods. The weapon's magazine with ammunition was discovered approximately thirty yards away.

Two and a half weeks later, on September 7, 2021, JPD Investigator Ashley Robertson assisted in executing an arrest warrant on Defendant. Defendant was arrested in the driveway of his residence. During the arrest, he admitted to the investigator that he was the driver of the vehicle during the August 20th incident. Defendant further added that he fled from Officer Cobb because he had a handgun that he knew he could not possess as a convicted felon.

A Madison County grand jury indicted Defendant for being a convicted felon in possession of a firearm (Count 1), evading arrest while operating a motor vehicle (Count 2), reckless driving (Count 3), driving while unlicensed (Count 4), violation of the registration law (Count 5), and disobeying a stop sign (Count 6). Defendant's bifurcated trial took place on March 23, 2022. The first portion of the trial concerned Counts 2-6, and the jury found Defendant guilty as charged on each count.

The second portion of the bifurcated proceeding, which is the subject of the present appeal, concerned Count 1—Defendant's charge of unlawful possession of a firearm after having been convicted of a felony crime of violence.[3] Therein, the State introduced a certified judgment of conviction for a July 2017 conviction for robbery, a Class C felony. The certified judgment of conviction was marked as Exhibit 8, and the document reflects that Defendant was originally charged with aggravated robbery, a Class B felony, before pleading guilty to the lesser charge. Also, at the bottom of the document, under "Special Conditions," it states: "4. Def. weapon is forfeited to the law enforcement agency that seized it."

---

[3] The Court of Criminal Appeals has explained that, when a defendant faces multiple charges that include a charge of unlawful possession of a firearm, the better procedure is to bifurcate the proceedings to address the unlawful possession of a firearm charge separately to eliminate or minimize the risk of undue prejudice. *See State v. Foust*, 482 S.W.3d 20, 46-47 (Tenn. Crim. App. 2015). Our intermediate courts have often discussed whether bifurcation should be mandatory or whether it is unfair to effectively force a defendant to stipulate to the prior felony for purposes of this charge. *See, e.g.*, *State v. Howard*, No. W2020-00207-CCA-R3-CD, 2021 WL 144235, at *3 (Tenn. Crim. App. Jan. 15, 2021); *State v. Olivo*, No. W2019-00530-CCA-R3-CD, 2020 WL 2510533, at *6-7 (Tenn. Crim. App. May 15, 2020). The propriety of bifurcation has not been raised in this case. Clearly, bifurcation is the better practice.

At the close of proof, after the second part of the bifurcated proceedings, the trial court provided the jury with both verbal and written instructions. The court outlined the elements of the offense, stating as follows:

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant had been convicted of ROBBERY; and

(2) that the defendant, after such felony conviction, possessed a firearm; an

(3) that the defendant acted either intentionally or knowingly; and

(4)(b) that the conviction was for *[a felony crime of violence]*.[4]

Although the trial court defined for the jury many of the important terms—such as "firearm," "possession," and "intentionally"—it did not define "crime of violence." Notably, the trial court's final verbal instructions to the jury included the following language: "Members of the jury, you must now determine again the Defendant's guilt or innocence as to Count 1, convicted felon in possession of a firearm after being convicted of a felony crime of violence, that being robbery . . . ."

The jury returned a verdict convicting Defendant of being a "convicted felon in possession of a firearm after having been convicted of a felony crime of violence, to wit: robbery." The judgment form reflects a conviction in Count 1 for a Class B felony. The trial court then imposed the following sentences for Defendant's convictions: ten years for unlawful possession of a firearm[5] (Count 1); two years for evading arrest (Count 2); six months for reckless driving (Count 3); and thirty days each for driving while unlicensed (Count 4), violating the registration law (Count 5), and disobeying a stop sign (Count 6).

---

[4] This is a quote from the written instructions provided to the jury, which is nearly identical to the trial judge's verbal instructions. The bracketed portion of the included quote indicates where, in the court's verbal instructions, it erroneously stated "felony of violence" rather than "crime of violence." *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992) ("Under Tennessee law the jury charge . . . will not be invalidated as long as it fairly defines the legal issues involved in the case and does not mislead the jury." (citations omitted)). In addition, according to the transcript, the word "recklessly" was removed, without objection, after the verbal instructions from the third element because the term was not included on Defendant's indictment.

[5] Pursuant to Tennessee Code Annotated section 40-35-501(y), Defendant's sentence is to be served at 85% release eligibility as set forth in the judgment.

The court ordered the sentences for Counts 2-6 to run concurrently to the ten-year sentence in Count 1, which resulted in an effective sentence of ten years to be served in the Tennessee Department of Correction. The trial court denied Defendant's subsequent motion for a new trial.

Defendant appealed, asserting before the Court of Criminal Appeals that the evidence at trial was insufficient to sustain his conviction for a Class B felony in Count 1. Defendant primarily argued[6] that the State failed to establish that his predicate felony (robbery) was a crime of violence and sought either the dismissal of Count 1 or, alternatively, a reduction of the charge from a Class B to a Class E felony. In addition, after oral argument, the intermediate court directed the parties to file supplemental briefs "to address the question of whether the jury instructions properly defined the term 'crime of violence.'" Order, *State v. Curry*, No. W2022-00814-CCA-R3-CD (Tenn. Crim. App. Mar. 9, 2023).

The Court of Criminal Appeals affirmed Defendant's conviction in Count 1 for a Class B felony. *State v. Curry*, No. W2022-00814-CCA-R3-CD, 2023 WL 3807168, at *7 (Tenn. Crim. App. June 5, 2023), *perm. app. granted*, (Tenn. Oct. 13, 2023). The intermediate court determined robbery is a crime of violence and the evidence presented at trial was sufficient to sustain Defendant's conviction. *Id.* at *5. Finally, despite ordering supplemental briefing on the issue, the Court of Criminal Appeals stated in its opinion that Defendant had waived review of the jury instructions under a plain error analysis. *Id.* at *6-7.

Defendant's ensuing application for permission to appeal to this Court again concerned only his conviction for unlawful possession of a firearm after having been convicted of a felony crime of violence. We granted Defendant's application to consider whether robbery is encompassed within the statutory definition of "crime of violence" and, if so, whether the evidence was sufficient to support Defendant's conviction for unlawful possession of a firearm after having been convicted of a felony crime of violence.

## II. STANDARD OF REVIEW

This appeal reaches us in the context of a review for sufficiency of the evidence. To determine whether the evidence is sufficient to support a conviction, an appellate court asks

---

[6] Defendant also argued before the Court of Criminal Appeals that the trial court erroneously admitted a federal gun trace report as an exhibit at trial. The Court of Criminal Appeals rejected this argument and concluded that the trial court did not abuse its discretion when it allowed the report to be introduced into evidence. *Curry*, 2023 WL 3807168, at *6. Defendant has not raised this issue again on appeal before this Court.

"whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (first citing Tenn. R. App. P. 13(e); and then citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In making this determination, we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010) (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). We do not reweigh the evidence, *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000), because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact, *Majors*, 318 S.W.3d at 857. "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)).

Our review for sufficiency of the evidence in this case also requires this Court to engage in statutory construction. Statutory construction is a question of law; therefore, we review this question de novo, with no presumption of correctness. *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020).

### III. ANALYSIS

The present appeal concerns Defendant's admitted unlawful possession of a firearm. At issue is whether the statutory language requires Defendant's firearm conviction to be punished as a Class E felony or elevated to a Class B felony.

Under Tennessee Code Annotated section 39-17-1307, unlawful possession of a firearm after having been convicted of a felony is a Class E felony. Tenn. Code Ann. § 39-17-1307(c)(1)-(2). However, if the prior conviction is for a felony "crime of violence," the punishment is increased to a Class B felony. *Id.* § 39-17-1307 (b)(1)(A)-(b)(2). Section 39-17-1301(3) defines "crime of violence" for purposes of this firearm offense as follows:

> "Crime of violence" includes any degree of murder, voluntary manslaughter, aggravated rape, rape, rape of a child, aggravated rape of a child, aggravated sexual battery, especially aggravated robbery, aggravated robbery, burglary, aggravated burglary, especially aggravated burglary, aggravated assault, kidnapping, aggravated kidnapping, especially aggravated kidnapping, carjacking, trafficking for commercial sex act, especially aggravated sexual exploitation, felony child abuse, and aggravated child abuse[.]

## A.

Here, the State sought Defendant's conviction for a Class B felony based on Defendant's prior robbery conviction, but notably, robbery is not one of the enumerated offenses in the statutory definition. Thus, the first step of our review is to engage in statutory construction to determine whether the statutory definition of "crime of violence" was intended to be an exhaustive list or merely illustrative. If the list is exhaustive, as Defendant argues, his Class B firearm conviction must fail as a matter of law. Conversely, if the legislature intended the list to be merely illustrative, we must consider whether robbery is a "crime of violence" under Section 39-17-1301(3).

When engaging in statutory interpretation, "well-defined precepts" apply. *State v. Frazier*, 558 S.W.3d 145, 152 (Tenn. 2018) (quoting *Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 512 (Tenn. 2017)); *State v. Howard*, 504 S.W.3d 260, 269 (Tenn. 2016) (quoting *State v. McNack*, 356 S.W.3d 906, 908 (Tenn. 2011)). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Howard*, 504 S.W.3d at 269 (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)); *see Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009) (citing *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)). In construing statutes, Tennessee law provides that courts are to "avoid a construction that leads to absurd results." *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010)). We look to "the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *Spires v. Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017) (quoting *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005)). Courts seek a reasonable interpretation "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Beard v. Branson*, 528 S.W.3d 487, 496 (Tenn. 2017) (quoting *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001)). The words in a statute "must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

In its consideration of this question, the Court of Criminal Appeals determined that the statutory list is illustrative, citing this Court's opinion in *State v. Marshall*, 319 S.W.3d 558 (Tenn. 2010). *See Curry*, 2023 WL 3807168, at *4. In *Marshall*, we stated, "When a statutory definition states that it 'includes' specific items, we have held that the 'enumerated items are illustrative, not exclusive.'" *Marshall*, 319 S.W.3d at 561 (quoting *Gragg v. Gragg,* 12 S.W.3d 412, 415 (Tenn. 2000)). In *Gragg v. Gragg*, a divorce proceeding, we considered the statutory definition of "marital property," which also

contained the word "includes" followed by a list of examples. We explained: "[T]he property interests identified in Section 36-4-121(b)(1)(B) are simply illustrative of the types of intangible property interests that may be classified as marital property. Other types of intangible property interests which are similar to those enumerated in the statute should also be considered marital property." 12 S.W.3d at 415 (citation omitted). As the Court of Criminal Appeals also emphasized in this case, other panels of the intermediate appellate court have found the statutory definition of "crime of violence" to contain an illustrative list. *See, e.g.*, *State v. Moses*, No. E2021-00231-CCA-R3-CD, 2022 WL 1038383, at *4 (Tenn. Crim. App. Apr. 6, 2022), *no perm. app. filed*; *State v. Theus*, No. W2016-01626-CCA-R3-CD, 2017 WL 2972231, at *8 (Tenn. Crim. App. July 12, 2017), *perm. app. denied*, (Tenn. Nov. 12, 2017). *But see State v. Dean*, No. W2018-01363-CCA-R3-CD, 2020 WL 1899612, at *14 (Tenn. Crim. App. Apr. 17, 2020) (reversing the defendant's conviction for unlawful possession of a firearm by a convicted felon, noting that "[r]eckless endangerment with a deadly weapon is not specifically included in the list of enumerated offenses that meet the definition of a 'crime of violence' in Tennessee Code Annotated section 38-17-1301(3)").

Although we have historically interpreted the term "includes" as an expansive term, other jurisdictions have construed "includes" as both a term of expansion and a term of limitation, depending on context. *See, e.g., Premier Health Care Invs., LLC v. UHS of Anchor, L.P.*, 849 S.E.2d 441, 449-50 (Ga. 2020) (citing *United States v. Howard*, 742 F.3d 1334 (11th Cir. 2014) (affording an expansive construction to "includes" when followed by a list of only a few items); *Carcieri v. Salazar*, 555 U.S. 379, 391-92 (2009) (construing "includes" as a narrowing term when followed by specific examples as opposed to general categories); *Dong v. Smithsonian Inst.*, 125 F.3d 877, 880 (D.C. Cir. 1997) (interpreting "includes" as a limiting term where followed by multiple specified categories rather than general principles)). We recognize that a crime of violence definition is qualitatively different than the marital property list at issue in *Gragg* because, as discussed below, this definition is vital to establishing an essential element of our unlawful possession offense. Thus, to inform our analysis, we examine our definition of "crime of violence" in the larger context of unlawful firearms statutes known also as felon-in-possession laws.[7]

In some jurisdictions, like Tennessee, the statutory definition of crime of violence conviction is incorporated as an element of an unlawful possession offense. In other jurisdictions, a prior "crime of violence" conviction is applied at sentencing to enhance a baseline unlawful possession conviction. In both procedural postures, attempts to define "crime of violence" have proven difficult and have resulted in significant federal and state litigation.

---

[7] *See generally* Dru Stevenson, *In Defense of Felon-in-Possession Laws*, 43 Cardozo L. Rev. 1573 (2022).

In the absence of a model definition for crime of violence, three common clauses used in such definitions legislatively emerged – "elements clause," "enumerated offenses clause," and "residual clause."[8] An elements clause commonly defines a crime of violence as a felony offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.[9] An enumerated offenses clause provides a list of specific criminal offenses determined by the legislative body to be crimes of violence that merit enhanced punishment.[10] Finally, a residual clause typically defines a crime of violence as a felony offense that by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[11]

In at least two jurisdictions (Louisiana and Massachusetts), the state legislatures authorized the broadest interpretation by including all three clauses within their "crime of violence" definitions.[12] In two other jurisdictions (Alabama and Mississippi), the

---

[8] Congress defined "crime of violence" using these three clauses. *See* 18 U.S.C. § 924 ("Armed Career Criminal Act"); *see also State v. Mills*, 844 S.E.2d 99, 107 (W. Va. 2020) (examining the three types of clauses); Shelby Burns, *The Johnson & Johnson Problem: The Supreme Court Limited the Armed Career Criminal Act's "Violent Felony" Provision – and Our Children Are Paying*, 45 Pepp. L. Rev. 785, 792 (Apr. 2018) (same); Veronica Saltzman, *Redefining Violence in the Federal Sentencing Guidelines*, 55 Harv. J. on Legis. 525, 531 (Summer 2018) (same).

[9] *See, e.g.*, 18 U.S.C. § 924(c)(3)(A).

[10] *See, e.g.*, 18 U.S.C. § 924(e)(B)(ii).

[11] *See, e.g.*, 18 U.S.C. § 924(c)(3)(B); *see also Johnson v. United States*, 576 U.S. 591, 597 (2015) (concluding the residual clause of 18 U.S.C. § 924(e)(2)(B) is unconstitutionally vague); *Sessions v. Dimaya*, 584 U.S. 148, 161-62 (2018) (concluding the residual clause of 18 U.S.C. § 16, as incorporated into the Immigration and Nationality Act's definition, is impermissibly vague); *United States v. Davis*, 588 U.S. 445, 470 (2019) (concluding the residual clause of 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague).

[12] To illustrate, the Louisiana statute provides:

In this Code, "crime of violence" means an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon. The following enumerated offenses and attempts to commit any of them are included as "crimes of violence" . . . [followed by a list of 62 enumerated crimes of violence]."

legislatures combined an enumerated offenses clause with additional language akin to a residual clause.[13] These statutes authorize a court to look beyond the specific enumerated offenses list to consider offenses that meet the general definition provided in the residual clause. Finally, most jurisdictions, including Tennessee, have adopted an enumerated offenses clause to define crime of violence.[14] The enumerated offenses clause specifically identifies the legislatively-chosen offenses that are "crimes of violence" as a matter of law. Thus, in the context of felon-in-possession laws and the corresponding definition of "crime of violence," it is a close question under the *Carcieri* and *Dong* line of cases, *supra*, whether "includes" followed by specific enumerated offenses (instead of general definitions) is indeed a term of limitation.

Ultimately, we decline this opportunity to expand our jurisprudence by adopting the limiting interpretation of "includes" in this setting. Instead, we adhere to our established precedent and agree with the Court of Criminal Appeals that the list of felony offenses in the statutory definition was intended to be illustrative. We are persuaded by the legislature's use of the word "includes" in section 39-17-1301(3), observing fifteen other statutory definitions contained in section 39-17-1301 that begin with the word "means" rather than "includes," and assuming, as we must, that this was intentional.[15] As stated above, other

---

La. Rev. Stat. Ann. § 14:2(B); *see also* Mass. Gen. Laws ch. 140, § 121 (containing all three clauses but with fewer enumerated crimes of violence).

[13] *See* Ala. Code § 13A-11-70(3) (defining crime of violence in the firearms code section using an enumerated offenses clause supplemented with the following language: "'Crime of violence' shall also mean any Class A felony or any Class B felony that has as an element serious physical injury, the distribution or manufacture of a controlled substance, or is of a sexual nature involving a child under the age of 12"); Miss. Code Ann. § 97-3-2 (defining crime of violence using an enumerated offenses clause but authorizing a court to further classify an offense as a crime of violence "if the facts show that the defendant used physical force, or made a credible attempt or threat of physical force against another person as part of the criminal act").

[14] *See, e.g.*, D.C. Code § 23-1331(4); Ind. Code § 35-47-4-5(b); Md. Code Ann., Pub. Safety §§ 5-101(c); Minn. Stat. Ann. § 624.712(5); 42 Pa. Cons. Stat. § 9714(g); R.I. Gen. Laws § 11-47-2(5); S.C. Code Ann. § 16-1-60; Tenn. Code Ann. § 39-17-1301(3); Utah Code Ann. § 76-3-203.5(1)(c); Vt. Stat. Ann. tit. 13, § 4017(d)(3); Va. Code Ann. § 17.1-805(C); Wash. Rev. Code § 9.41.010(7); Wyo. Stat. Ann. § 6-1-104(xii).

[15] The statutory provisions cited above, *supra* note 14, reveal that most jurisdictions (DC, IN, MD, MN, PA, UT, VT, WA, WY) with an enumerated offenses clause definition for crime of violence use the term "means" before the enumerated list of offenses. Interestingly, Rhode Island uses "means and includes;" South Dakota uses "any of the following;" and Virginia uses "shall include any felony violation of" followed by a list of numerous criminal offense statutory provisions. South Carolina uses "includes" but removes any doubt that the list is exhaustive by adding the following language at the end of the

panels of the Court of Criminal Appeals have likewise read the statutory list as illustrative. We conclude the statutory definition of "crime of violence" contained in section 39-17-1301(3) is illustrative of the felonies deemed to be crimes of violence by the legislature.

**B.**

Next, we consider whether robbery, which is not specifically mentioned on the enumerated offenses list, is a crime of violence under our statutory definition. Although this Court has not previously examined this question, other panels of the intermediate appellate court have assessed the validity of convictions for unenumerated crimes of violence, albeit without a fulsome discussion.

In *State v. Theus*, the defendant's prior conviction was for facilitation of first degree murder, which is not an enumerated offense in section 39-17-1301(3). 2017 WL 2972231, at *3. In concluding that this offense was a "crime of violence," the *Theus* panel considered the elements of the underlying crime and simply reasoned that first degree murder "is clearly a violent felony." *Id.* at *8. The intermediate court therefore concluded that the judgment of conviction for facilitation of first degree murder was sufficient evidence to support the firearm conviction. *Id.*

In *State v. Moses*, the defendant's prior conviction was for aggravated burglary, which was not one of the enumerated crimes of violence at the time. 2022 WL 1038383, at *1. The *Moses* panel noted that burglary was on the statutory list and, citing *Theus*, the panel reasoned: "In the same way, common sense dictates that if burglary is a crime involving violence, aggravated burglary is also a crime involving violence." *Id.* at *4 (citation omitted). This panel of the intermediate court also concluded that the judgment of conviction for the defendant's prior felony was sufficient evidence to support the "crime of violence" element of his firearm conviction. *Id.* at *5.

Notably, although the prior felonies discussed in *Theus* and *Moses* were not specifically identified in the statutory definition, the prior felonies concerned degrees (of offense or culpability) of predicate felonies that *are* contained on the crime of violence list. Conversely, in *State v. Dean*, a different panel of the Court of Criminal Appeals overturned the defendant's unlawful possession of a firearm conviction where the predicate felony was for reckless endangerment. *Dean*, 2020 WL 1899612, at *13-14. Like the prior felonies in the other discussed cases, reckless endangerment is not an enumerated offense in section 39-17-1301(3). Despite proof that the defendant had initially been charged with aggravated

enumerated list: "Only those offenses specifically enumerated in this section are considered violent offenses."

assault and had threatened a woman with a knife, the *Dean* panel found the evidence was insufficient to support the unlawful possession of a firearm charge because

> the State failed to present any evidence *from which the jury could have concluded* that the Defendant's reckless endangerment with a deadly weapon conviction was a felony conviction for a crime of violence, *an essential element* for the Defendant to be convicted of a violation of Tennessee Code Annotated section 39-17-1307 as charged in his indictment.

*Id.* at \*14 (emphasis added).

Admittedly, our legislature has provided little insight into the criteria it used to select the enumerated offenses on the list.[16] As we consider whether the list may encompass robbery, we make the following observations about the crime of violence definition. First, the definitions section of Part 13 Weapons begins with the phrase, ***"[a]s used in this part*.**" Tenn. Code Ann. § 39-17-1301 (2018 & Supp. 2024) (emphasis added). This opening phrase indicates this section provides the exclusive definitions for the terms used in the firearms offenses contained in this part of the Code. Second, while it is possible, if not probable, the legislature chose offenses that would or could be encompassed within a typical elements or residual clause, our legislature (unlike Louisiana[17] and Massachusetts)

---

[16] We observe that the unlawful possession statute initially contained an elements clause with no separate definition for "crime of violence." *See* Tenn. Code Ann. § 39-17-1307(b)(1)(A) (1991) (prohibiting possession of a handgun when a person "[h]as been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon"). In 2010, the legislature added a "crime of violence" definition that was an enumerated offense clause that listed nine offenses; however, it also retained the elements clause within the unlawful possession statute. *See* Tenn. Code Ann. § 39-17-1301(3) (2010) (indicating "'[c]rime of violence' includes any degree of murder, voluntary manslaughter, aggravated rape, rape, especially aggravated robbery, aggravated robbery, burglary, aggravated assault, or aggravated kidnapping"); Tenn. Code Ann. § 39-17-1307(b)(1)(A) (2010). The elements clause within the statute and the "crime of violence" definition remained largely unchanged until July 1, 2018, when the legislature replaced the elements clause with the term, "felony crime of violence," enhanced the punishment for this offense, and expanded the "crime of violence" definition to include twenty-one enumerated offenses. *See* Tenn. Code Ann. § 39-17-1307(b)(1)(A) (2018) (prohibiting possession of a handgun when a person "[h]as been convicted of a felony crime of violence"); Tenn. Code Ann. § 39-17-1301(3) (2018) (adding to the enumerated list the offenses of rape of a child, especially aggravated rape of a child, aggravated sexual battery, aggravated burglary, especially aggravated burglary, kidnapping, especially aggravated kidnapping, carjacking, trafficking for commercial sex act, especially aggravated sexual exploitation, felony child abuse, and aggravated child abuse). Despite the expansion of the "crime of violence" definition, robbery has never been added to the list.

[17] *See State v. Kelly*, 277 So. 3d 855, 864 (La. Ct. App. 2019) (explaining that because the enumerated crimes list is merely illustrative, unlisted offenses may be denominated as crimes of violence

- 12 -

chose not to insert such clauses into the current "crime of violence" definition to guide consideration of unenumerated offenses. Third, and in further support of a narrow interpretation, a conviction for a felony crime of violence is an essential element of this unlawful possession offense. *Dean*, 2020 WL 1899612, at *14. In *State v. Gentry*, 538 S.W.3d 413, 420 (Tenn. 2017), this Court explained that "[t]he power to define criminal offenses . . . is vested in the legislature."[18]

To that end, as we closely examine the legislature's definition of crime of violence, we note that the enumerated list includes especially aggravated robbery and aggravated robbery as "crime[s] of violence" but does not include the lesser degree offense of robbery. As the State points out, it is possible—and probable, even—that the legislature did not list robbery because it did not want to convey that robbery *always* qualifies as a crime of violence.[19] "Robbery is the intentional or knowing theft of property from the person of another by violence *or* putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2018) (emphasis added). It is uncontroversial for us to conclude that robbery (a lesser degree offense of two enumerated offenses) *can* be a crime of violence for purposes of the unlawful possession statute, depending on the underlying facts of the robbery case.[20]

---

under the general definition provided by the "crime of violence" statute). Our statute does not provide this option.

[18] The Louisiana Supreme Court made this same observation when it explained:

> While the Legislature has plenary authority to define crimes and prescribe punishments and remains essentially free to add any crime to [the crime of violence statutory definition] it sees fit as a shorthand means of increasing the severity of the offense . . . , courts do not have that same discretion. Rather, the only standard provided to [the court] by the Legislature for determining whether an unenumerated crime is a crime of violence is the general rule [contained in the elements and residual clauses of the statutory definition of "crime of violence"].

*State v. Oliphant*, 113 So. 3d 165, 170 (La. 2013).

[19] Defendant makes much of the legislature's failure, thus far, to add robbery to the statutory list of crimes despite ample opportunity to do so. He points to the fact that the legislature has previously added a crime (aggravated sexual battery) to the statutory list. *Compare* Tenn. Code Ann. § 39-17-1301(3) (Supp. 2017), *with* Tenn. Code Ann. § 39-17-1301(3) (2018). The Committee on Pattern Jury Instructions (Criminal) made a similar observation, questioning the legislature's omission of robbery and other offenses under a previous version of the unlawful possession statute. *See* T.P.I. – Crim. 36.05(a), cmt. 4. These astute observations, however, do not derail our conclusion.

[20] In reaching this narrow conclusion, we recognize that an unenumerated offense may be a "crime of violence" when the offense is a greater or lesser degree offense of an enumerated offense. We do not

## C.

Having concluded that robbery may be a crime of violence, the next step of our review is to determine who—judge or jury—makes the determination of whether a prior conviction for robbery qualifies as a "conviction for a felony crime of violence" for purposes of the unlawful possession of a firearm statute. Stated differently, is this a question of law for the court or a factual question for the jury?

Defendant argues that a properly instructed jury presented with certain facts must determine whether the prior robbery is a crime of violence. Defendant emphasizes that this inquiry is an essential element of the crime for which he was charged and must be proven beyond a reasonable doubt. He avers that by submitting only the judgment of conviction for robbery, the State failed to present sufficient evidence that robbery, in this instance, was a crime of violence.

The State argues that whether a prior robbery is a crime of violence is a question of law for the trial court, not the jury. The State cites to *State v. Sims*, 45 S.W.3d 1, 10-15 (Tenn. 2001), a capital case in which the State relied on the prior violent felony aggravating circumstance in seeking the death penalty when the prior felony was aggravated assault. In *Sims*, after determining that aggravated assault does not necessarily involve the use of violence, the trial court considered the underlying facts of the prior convictions as alleged in the indictment and affidavit of complaint. *Id.* at 10-11. After being satisfied that the elements of the prior convictions involved the use of violence, the court allowed the State to introduce the prior conviction of aggravated assault to the jury. *Id.* This Court affirmed, stating as follows:

> In determining whether the statutory elements of a prior felony conviction involve the use of violence against the person for purposes of § 39–13–204(i)(2), [the prior violent felony aggravating circumstance,] we hold that the trial judge must necessarily examine the facts underlying the prior felony if the statutory elements of that felony may be satisfied either with or without proof of violence. To hold otherwise would yield an absurd result, the particular facts of this case being an ideal example. A plain reading of the statute indicates that the legislature intended to allow juries to consider a defendant's prior violent crimes in reaching a decision during the sentencing phase of a first degree murder trial. The underlying facts of Sims's prior felony convictions involve his shooting two people sitting in a car. To

suggest, however, that a *lesser* degree offense of every enumerated offense may be a "crime of violence," particularly if such lesser offense does not contain an element of violence.

- 14 -

hold that these prior convictions do not involve use of violence against a person would be an absurd result contrary to the objectives of the criminal code. We cannot adhere to a result so clearly opposing legislative intent.

*Id.* at 11-12. Thus, the State urges the Court to conclude that the question of whether the defendant's prior robbery conviction qualifies as a crime of violence is a legal one and to adopt the *Sims* procedure. This procedure would require the trial court to make the threshold legal determination in cases involving a charge of unlawful possession of a firearm by a convicted felon and to instruct the jury accordingly. The record indicates that this type of procedure is essentially what occurred in the present case. As noted, the trial court effectively concluded as a matter of law that the defendant's prior robbery conviction was a "conviction for a felony crime of violence."

While at first blush, the procedural framework of *Sims* is appealing, the *Sims* procedure applies only in the capital *sentencing phase* to determine whether a particular aggravating circumstance exists. However, as mentioned above, the situation before us involves an *essential element* of a criminal offense.[21] The United States Supreme Court has long held that criminal convictions are constitutionally required "to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510 (1995) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 277–278 (1993)). After thorough consideration, we agree with Defendant and conclude that whether a particular robbery conviction is a crime of violence for purposes of section 39-17-1307(b)(1)(A) is a question for a properly instructed jury. Thus, in determining that Defendant's prior robbery conviction was a crime of violence as a matter of law and by inserting this legal conclusion into the jury instruction, the trial court improperly usurped the function of the jury.

Moreover, because the jury is making the determination, and not the judge, the inquiry should focus on how the offense was actually committed in the case at hand, not how the offense is ordinarily committed.[22] Here, the record reflects that there was insufficient evidence to prove that Defendant's prior robbery was a crime of violence. The 2017 certified judgment of conviction, which contained minimal information concerning

---

[21] The parties agreed at oral argument that whether Defendant has been convicted of a felony crime of violence is an essential element of the offense, not merely a basis for enhancing his sentence.

[22] Focusing the inquiry on the conduct of the particular defendant avoids the vagueness problems that have plagued the categorical approach employed by federal courts. *See Davis*, 588 U.S. at 448 (holding unconstitutionally vague the residual clause of 18 U.S.C. § 924(c)(3)(B), which increases the sentence for defendants who used a firearm during a felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense").

the robbery, was the only evidence presented. Although a certified judgment of conviction ordinarily will be sufficient to establish a conviction for a felony specifically enumerated in Tennessee Code Annotated section 39-17-1301(3), it would most likely be insufficient, standing alone, to prove a particular robbery was a crime of violence. Because robbery can be committed by means other than violence, the State must present sufficient evidence, which is admissible under our Rules of Evidence, to prove the robbery was committed by violence, such that a jury may consider whether the State proved beyond a reasonable doubt the essential element that the conviction was for a felony crime of violence.

In this case, besides the actual fact of the conviction, the only information that can be gleaned from the certified judgment of conviction is that the prosecutor initially charged Defendant with aggravated robbery and that a weapon was seized as a condition of his guilty plea. This information alone, without context, is not enough for a reasonable jury to conclude that Defendant's 2017 robbery was a conviction for a crime of violence.

Because the State had ample opportunity at trial to present evidence that this robbery conviction was a "conviction for a felony crime of violence," we conclude that it is proper to reduce Defendant's conviction in Count 1 from a Class B felony to a Class E felony. *See Bandy v. State*, 575 S.W.2d 278, 281 (Tenn. 1979).

**D.**

As a final matter, we must address jury instructions. In the Court of Criminal Appeals, Defendant raised the same issue discussed herein concerning the sufficiency of the evidence on Count 1. After oral argument, the intermediate court directed the parties to file supplemental briefs "to address the question of whether the jury instructions properly defined the term 'crime of violence.'" Despite ordering supplemental briefing on the issue, the Court of Criminal Appeals stated in its opinion that Defendant had waived review of the jury instructions. *Curry*, 2023 WL 3807168, at *7. It explained that "[a]fter reviewing the supplemental briefs and applying a plain error analysis, we conclude that no clear and unequivocal rule of law has been breached pertaining to this issue." *Id.* In both his application for permission to appeal and appellate brief in this Court, Defendant raised the issue: "Whether the trial court's jury instructions were inaccurate and incomplete because they failed to provide either a statutory or jurisprudential definition for 'felony crime of violence' . . . ." Before this Court, he conceded that he failed to challenge the jury instruction before the trial court and admitted that the issue may be waived.

Nonetheless, we conclude the jury instruction issue is embedded within our review of this case for sufficiency of the evidence and statutory construction. *See, e.g.*, *State v. White*, 362 S.W.3d 559, 581 (Tenn. 2012). Because we have determined that a jury must make the determination of whether a given robbery is a crime of violence for purposes of

this unlawful possession of a firearm offense, our decision will necessarily result in changes to the accompanying definition of "crime of violence" provided in the pattern jury instructions.

The Committee on Pattern Jury Instructions (Criminal) is certainly capable of the task. By way of guidance, however, we note that our decision does not alter the pattern instruction's recitation of the essential elements of the offense, including the element applicable here – "that the conviction was for a felony crime of violence." *See* T.P.I. – Crim. 36.05(a). Our decision does impact or at least inform the definitions for "crime of violence," which are a part of the instructions. To be clear, "crime of violence" as used in this unlawful possession offense should be defined in every case to guide the jury's consideration of this essential element. Of course, the definition inserted in a given case should correspond to the applicable statute based on the date of the offense.[23] When the alleged "crime of violence" is one of the enumerated offenses, the trial court should (immediately following the instruction for this essential element) instruct the jury that the particular enumerated offense alleged by the State is a crime of violence.[24]

However, because robbery is not expressly included on the enumerated offenses list and because it may be committed by alternative means, the trial court must provide additional instruction. The jury instructions should inform the jury the State has alleged that a prior robbery conviction is a felony crime of violence, inform the jury of the essential elements of robbery, and explain to the jury that it must unanimously find that the prior robbery was in fact committed by the use of violence before it can find that the robbery conviction is a felony crime of violence.[25]

---

[23]The current pattern instruction includes alternative language depending on the date of the offense, referencing at least two effective dates. *See* T.P.I. – Crim. 36.05(a).

[24] For example, in Minnesota, a similar essential element in its unlawful possession jury instruction instructs the jury that it must find "the defendant had been convicted for committing a crime of violence" followed by "[y]ou are instructed that (INSERT crime of violence listed in Minn. Stat. § 624.712, subd. 5) is a crime of violence." 10A Minn. Prac., Jury Instr. Guides – Crim. (CRIMJIG) 21.01. In other words, a felony included in the enumerated offenses list is a crime of violence as a matter of law for purposes of this essential element.

[25] For example, the pattern jury instruction could provide bracketed language similar to the following:

> [In this case, the State has alleged as the felony crime of violence the defendant's 2017 robbery conviction. You are instructed that robbery is the intentional or knowing theft of property from the person of another by violence *or* putting the person in fear. In order to conclude that the robbery conviction is "a conviction for a felony crime of violence," you must unanimously find that the 2017 robbery was, in fact, accomplished by violence.]

### III. CONCLUSION

For the foregoing reasons, we conclude that the list of enumerated offenses contained in the definition of "crime of violence" in Tennessee Code Annotated section 39-17-1301(3) is illustrative rather than exhaustive. We also conclude that, although not included on the list of enumerated offenses, robbery may be a crime of violence[26] when admissible evidence presented to a properly instructed jury establishes the prior robbery was in fact committed by violence. Notwithstanding these conclusions, we have determined in this case the evidence was insufficient to establish a conviction for a felony crime of violence, an essential element of the unlawful possession of a firearm offense under section 39-17-1307(b)(1)(A). Therefore, the decision of the Court of Criminal Appeals is reversed, in part, and the trial court's judgment on Count 1 is vacated. However, because the evidence was sufficient to support a conviction for the unlawful possession of a firearm by a convicted felon under section 39-17-1307(c)(1), the case is remanded to the trial court for entry of a new judgment reducing the conviction in Count 1 to a Class E felony and for appropriate resentencing consistent with this opinion. It appearing that Defendant, Christopher Oberton Curry, Jr., is indigent, costs of this appeal are taxed to the State of Tennessee.

_____
ROGER A. PAGE, JUSTICE

---

At its discretion, the Committee on Pattern Jury Instructions (Criminal) could further explain that the element of violence as used in the offense of robbery "is evidence of physical force unlawfully exercised so as to damage, injure or abuse." *State v. Fitz*, 19 S.W.3d 213, 217 (Tenn. 2000).

[26] In reaching this conclusion, we are mindful that the General Assembly is always at liberty to reduce or expand the enumerated offenses list or otherwise modify the "crime of violence" definition as it deems proper. As to the issues raised in this appeal, if the legislature intended the current list to be exhaustive rather than illustrative, it can easily effect that change.